UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DANIEL R. DALRYMPLE and<br>LESLIE W. WHITE, JR., | ) | Civ. 12-4098-KES |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT DOOLEY, Warden; | ) | |
| JENNIFER STANWICK, | ) | ORDER GRANTING IN PART AND |
| Associate Warden; | ) | DENYING IN PART DEFENDANTS' |
| SUE JACOBS, Associate Warden; | ) | MOTION FOR JUDGMENT ON THE |
| MR. MAJOR TJEERDSMA; | ) | PLEADINGS AND EXTENDING |
| MS. JACKIE PETERSON; | ) | DEADLINE FOR FILING MOTION FOR |
| MS. ST. PIERRE; | ) | SUMMARY JUDGMENT BASED ON |
| MR. CORY NELSON; | ) | QUALIFIED IMMUNITY |
| MR. TOM GILLCHEST; | ) | |
| MR. FITCH; | ) | |
| MR. TRAVIS TJEERDSMA; | ) | |
| MS. TAMMY DOYLE; | ) | |
| MS. LORI DROTZMAN; | ) | |
| MR. TREVOR PASCH; | ) | |
| MR. GREG KATHAN; | ) | |
| MS. KIM LIPPENCOTTE; | ) | |
| MR. SUNNY WALTERS; | ) | |
| MR. LANE SCHRYVERS; | ) | |
| MR. JOSHUA KLIMEC; | ) | |
| MR. JIM HALZEY; | ) | |
| MR. SGT. GARY CHRISTENSEN; | ) | |
| MS. NANCY CHRISTENSEN; | ) | |
| MS. DIANE ROMKEMA; | ) | |
| MR. MARK BIDNE; | ) | |
| MS. C. GROSSHEESCH; | ) | |
| MR. HENVEY; | ) | |
| MR. CPL. ROMKEMA; | ) | |
| MR. SGT. JERRAME LARSON; | ) | |
| MR. LT. GROSSHEESCH; | ) | |
| MR. AVDOYAN; | ) | |
| MR. CAPTION DOYLE; | ) | |

MS. MARROW;                          )
MR. LT. SESTAK;                      )
MS. DEB EILERS; and                  )
MR. MARK PISCHEL,                    )
                                     )
   Defendants.        )

  Plaintiffs, Daniel R. Dalrymple and Leslie W. White, Jr., filed a second amended complaint, which the court permitted by order dated May 30, 2013. Dockets 150, 157. On July 11, 2013, defendants moved for judgment on the pleadings and a motion to extend deadlines. Docket 161. To date, plaintiffs have failed to respond to either motion. For reasons set forth below, the court grants in part defendants' motion for judgment on the pleadings and grants defendants' motion for an extension of time to file a motion for summary judgment based on qualified immunity.

**STANDARD OF REVIEW**

  The court reviews a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard that governs a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (citations omitted). "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law." *Mills v. City of Grand Forks*, 614 F.3d 495, 497–98 (8th Cir. 2010) (citation omitted). "The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party." *Id.* (citation

2

omitted). Nonetheless, "[t]he facts alleged in the complaint must be enough to raise a right to relief above the speculative level." *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Id.* (citation omitted); *see also* Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1371, at 276 (2004) ("Conversion . . . will not occur with regard to all matters subject to judicial notice and things that are central or integral to the nonmoving party's pleading.").

Pro se complaints, " 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nonetheless, a pro se complaint must comply with the minimal requirements set forth in the Federal Rules of Civil Procedure, which specifically require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a pro se complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pro se complaint must "allege facts sufficient to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to

"supply additional facts, nor will [it] construct a legal theory that assumes facts that have not been pleaded." *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). If the complaint does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## I.     The Court Denies Defendants' Motion Related to Previously Asserted and Dismissed Claims.

On January 2, 2013, the court issued an order dismissing the majority of plaintiffs' claims for failure to state a claim upon which relief may be granted. Docket 103. Nonetheless, in their second amended complaint, plaintiffs reasserted three of the previously dismissed claims. Docket 150-1. Defendants argue that the mere fact that plaintiffs reasserted previously dismissed claims is grounds for dismissing Counts 5, 6, and 17 from the second amended complaint. Docket 162 at 2–3. Upon review, however, it appears that although the reasserted claims are similar to previously dismissed claims, plaintiffs have provided additional facts to state claims upon which relief may be granted and the prior order dismissing the claim was without prejudice.

In Count 5, Dalrymple asserts that despite meeting all requirements for admission into a firefighter training course, defendants Jacqueline Peters and Robert Dooley denied him admission.[1] Docket 150-1 at 8. Because other inmates

---

[1] In the original complaint, Dalrymple did not allege that he had met all requirements for admission into a firefighter training course. Docket 1 at 14. Rather, Dalrymple represented that he had been denied admission into the firefighter training course due to a classification problem. *Id.*

were granted admission, Dalrymple alleges that defendants violated his rights under the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment prohibits the government from unfairly discriminating between similarly situated groups. To invoke the protections of the Equal Protection Clause, a plaintiff must "allege he was a member of a protected class or that a fundamental right was violated." *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003).

If neither of those elements are alleged, a plaintiff must allege "that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990)); *see also Romer v. Evans*, 517 U.S. 620, 631 (1996) (explaining that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end"). In the instant case, Dalrymple has not alleged that he is a member of a protected class or that defendants violated a fundamental right, but he has alleged that he was treated differently than similarly situated individuals. According all reasonable inferences from those facts to Dalrymple and seeing no evidence that the difference in treatment bears a rational relation to a legitimate penal interest,

5

the court finds that Dalrymple has alleged an equal protection claim. Defendants are therefore not entitled to judgment on the pleadings with regard to Count 5.

In Count 6, Dalrymple asserts that defendants Tom Gilchrist and Cory Nelson acted with deliberate indifference toward his serious medical need—namely, a risk of suicide—by denying him appointments with the mental health staff.[2] To state a claim for deliberate indifference to medical needs under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. More specifically, a prisoner must allege " '(1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.' " *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th. Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). Dalrymple now alleges that defendants denied him mental health care despite their knowledge that he had "a history of self harm and

---

[2] In the original complaint, Dalrymple did not allege that he suffered from a serious medical need. Docket 1 at 13.

suicide." Docket 150-1 at 9. Because the Eighth Circuit has held that "the risk of suicide by a prisoner is considered a serious medical need," the court finds that Dalrymple has sufficiently alleged a deliberate indifference claim. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). Defendants are therefore not entitled to judgment on the pleadings with regard to Count 6.

Finally, in Count 17, Dalrymple and White assert that defendant Jim Halzey denied them access to a typewriter. Docket 150-1 at 20. This claim is similar to the access to courts claim plaintiffs asserted in their original complaint, but this time plaintiffs have supplied additional facts.[3] In the second amended complaint, plaintiffs allege they were denied access to typewriters because they named Halzey in a lawsuit, whereas inmates who had not named Halzey in a lawsuit received access to typewriters.

Although plaintiffs characterized Count 17 as an access to courts claim, the court finds it is more properly construed as either an equal protection claim or a retaliatory discipline claim. As previously explained, to state a cognizable equal protection claim, a plaintiff must allege "that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler*, 137 F.3d at 1051 (citing *Timm*, 917 F.2d at 1103). Here, Dalrymple and White allege that Halzey

---

[3] In the original complaint, Dalrymple alleged an access to courts claim but failed to establish that they suffered an actual injury as a result of being unable to use the typewriter. Docket 1 at 21.

treated them differently than similarly situated individuals when he denied them access to the typewriter. According all reasonable inferences from those facts to plaintiffs and seeing no evidence that the difference in treatment bears a rational relation to a legitimate penal interest, the court finds that plaintiffs have stated an equal protection claim upon which relief may be granted.

Count 17 can also be construed as a retaliatory discipline claim. To establish a prima facie case of retaliatory discipline, a plaintiff must show that "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009). Dalrymple and White have alleged each of these elements—they filed a legal action against Halzey,[4] Halzey subsequently denied them access to the typewriters, and plaintiffs' legal action was presumably the motivation for Halzey's discipline. Based on these facts, the court finds that plaintiffs have stated a retaliatory discipline claim upon which relief may be granted. Accordingly, defendants are not entitled to judgment on the pleadings with regard to Count 17.

---

[4] It is well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).

## II. The Court Grants Defendants' Motion Related to Defendants Not Properly Joined As Parties.

Defendants assert that Counts 2, 19, 24, 27, 31, 32, 33, 36, 39, and 68 should be dismissed because the facts asserted relate to defendants not named as parties to this action.[5] Docket 162 at 3. Pursuant to the Federal Rules of Civil Procedure,

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (1)    as a practical matter impair or impede the person's ability to protect their interest; or
>>
>> (2)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

In the instant case, plaintiffs' complaint contains ten counts wherein the facts alleged relate to individuals or entities who have not been named as parties to this action.[6] Because "respondeat superior cannot be the basis of liability in a

---

[5] Alternatively, defendants contend that the aforementioned counts fail to state a claim upon which relief may be granted and should therefore be dismissed because Dalrymple and White "cannot receive the relief they seek from the named parties." *Id.* at 4.

[6] In the caption of their second amended complaint, plaintiffs make reference to an attachment. *See* Docket 150-1 at 1. Because there was no attachment to the second amended complaint, the court referred to the defendant list attached to the first amended complaint. *See* Docket 107 at 3.

9

§ 1983 action," *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990), the court would be unable to accord complete relief among existing parties in the event plaintiffs were entitled to relief on Counts 2, 19, 24, 27, 31, 32, 33, 36, 39, and 68. Further, the unnamed parties have not received notice of this action and are therefore unable to adequately protect their interests. In accordance with Fed. R. Civ. P. 19(a)(1), therefore, plaintiffs were required to join the parties from whom they seek relief in Counts 2, 19, 24, 27, 31, 32, 33, 36, 39, and 68. Because plaintiffs failed to do so, defendants are entitled to judgment on the pleadings with regard to Counts 2, 19, 24, 27, 31, 32, 33, 36, 39, and 68.

**III.    The Court Grants Defendants' Motion Related to Defendants Against Whom No Claims Are Asserted.**

Defendants assert that plaintiffs' second amended complaint does not contain facts sufficient to support a claim against the following defendants: Trevor Pasch, Greg Kathan, Lane Schryvers, Gary Christensen, and Jerrame Larson. After reviewing the plaintiffs' second amended complaint, the court was unable to find facts sufficient to support claims against these individuals. The court will not construct a legal theory that assumes facts that have not been pleaded. *Stone*, 364 F.3d at 914 (citing *Dunn*, 880 F.2d at 1197). Accordingly, defendants Trevor Pasch, Greg Kathan, Lane Schryvers, Gary Christensen, and Jerrame Larson are entitled to judgment on the pleadings.

**IV.    The Court Grants In Part and Denies In Part Defendants' Motion Related to Claims Upon Which Relief May Not Be Granted.**

Defendants move for the dismissal of the majority of the counts remaining in plaintiffs' second amended complaint for failure to state a claim upon which relief may be granted. The court will address defendants' arguments and the corresponding claims one constitutional right at a time.

**A.    Access to Courts under the First Amendment**

The court has construed the following counts as access to courts claims arising under the First Amendment: Counts 11, 14, 15, 16, 18, 22, 29, 37, 49, 64, 67, and 70. Defendants argue that each of these claims should be dismissed for failure to state a claim upon which relief may be granted, either because plaintiffs have failed to allege a constitutional violation or because plaintiffs are no longer entitled to the equitable relief requested. Docket 162 at 6, 8–10, 12, 14, 16, 19–20, 23–25.

It is well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To prevail on an access to courts claim, a prisoner must establish that he has sustained "an actual injury." *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (citing *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997)). To demonstrate "actual injury," the prisoner must show " 'that a nonfrivolous legal claim had been frustrated or was being impeded.' " *Id.* (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)).

11

Dalrymple and White assert that one or both of them have been denied access to the courts due to the following: (1) a shortage of updated law materials (Counts 11, 22); (2) outdated law books (Count 14); (3) the inability to contribute personally owned legal materials to the prison law library (Count 15); (4) the inability to speak with one another about pending litigation (Counts 16, 18); (5) the withholding of confiscated, blank legal forms (Count 29); (6) the preferential treatment given to other inmates in the computer lab (Count 37); (7) being limited to five legal mailings per week (Count 49); (8) a refusal to provide copies of legal documents (Count 64); (9) the unavailability of a jailhouse lawyer (Count 67); and (10) the limitations placed on outgoing legal mail (Count 70).

As defendants have asserted and the court agrees, Dalrymple and White have failed to allege an actual injury with regard to any of the aforementioned access to courts claims. The closest plaintiffs get to alleging an actual injury is in Count 11, where Dalrymple alleges that inadequate research materials in the prison law library have prevented him from researching and filing tort claims. Docket 150-1 at 14. Dalrymple does not, however, allege facts to suggest that the tort claims at issue were nonfrivolous legal claims. Moreover, as defendants argue, the United States Supreme Court has indicated that an inmate's right to meaningful access to courts applies to their pursuit of direct appeals from the convictions for which they are incarcerated, habeas petitions, and actions under 42 U.S.C. § 1983. *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (citations omitted).

12

> In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355. Plaintiffs therefore have no constitutional right to particular research materials insofar as it relates to tort actions. Even if they did, however, this claim fails for failure to allege facts sufficient to support the assertion that inadequate research materials frustrated or impeded nonfrivolous legal claims. Defendants are therefore entitled to judgment on the pleadings with regard to Count 11.

Plaintiffs also attempt to allege an actual injury in Count 14, where plaintiffs claim that the outdated legal materials in the prison law library prevent inmates from reviewing current legal texts; in Count 16, where Dalrymple claims that his inability to speak with White has prevented them from preparing a class action lawsuit; in Count 22, where Dalrymple asserts that the incomplete law library has prevented him from accessing the courts "in other civil suits filed against the DOC and state officials"; in Count 37, where Dalrymple alleges that defendant Drotzman's preferential treatment of other inmates with regard to computer access has caused delays in the preparation of documents for this action; and in Count 70, where White alleges that his inability to send legal mail "as needed" has resulted in missed court deadlines. Docket 150-1 at 17, 18, 25,

74. These alleged injuries, however, are bare assertions of injury and do not rise to the level of establishing that the alleged deprivations frustrated or impeded nonfrivolous legal claims. Accordingly, defendants are entitled to judgment on the pleadings with regard to Counts 14, 16, 22, 37, and 70.[7]

Finally, in Counts 15, 18, 29, 49, 64, and 67, plaintiffs do not even vaguely allege that an actual injury resulted from defendants' alleged conduct. *See* Docket 150-1 at 18, 21, 32, 53, 68, 71. Instead, when prompted to state how each plaintiff has been injured by defendants' actions or inactions, plaintiffs merely reiterate supporting facts and conclusory allegations. For example, in Count 15, Dalrymple alleges that his inability to contribute personally owned legal materials to the prison law library has resulted in an inadequate law library; in Count 18, plaintiffs allege that their inability to speak with one another about pending litigation has resulted in the denial of access to co-plaintiffs; in Count 29, plaintiffs allege that the withholding of confiscated, blank legal forms has resulted in the withholding of legal documents; in Count 49,

---

[7] To the extent Dalrymple intended Counts 15 and 16 to be construed as harassment claims, the court reminds plaintiffs that claims of general harassment are not cognizable under § 1983. *McDowell v. Jones*, 990 F.2d 433 (8th Cir. 1993). And to the extent plaintiffs intended Count 29 to be construed as a claim for deprivation of property, the court reminds plaintiffs that claims alleging a negligent or intentional deprivation of property do not rise to the level of constitutional violations. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that intentional deprivations of property do not violate the due process clause of the Constitution so long as there are adequate post-deprivation remedies available at the state level). Under South Dakota law, plaintiffs may bring a conversion action in state court for the alleged loss of property.

14

plaintiffs allege that being limited to five legal mailings per week has resulted in a denial of access to court correspondence; in Count 64, White alleges that defendant Lori Drotzman's refusal to provide copies of legal documents has resulted in a denial of photocopies; and in Count 67, White alleges that the unavailability of a jailhouse lawyer has resulted in unnecessary stress. None of these facts suggest that the alleged deprivations frustrated or impeded any sort of legal claim, let alone a nonfrivolous one. Accordingly, defendants are entitled to judgment on the pleadings with regard to Counts 15, 18, 29, 49, 64, and 67.[8]

### B.    Free Exercise of Religion Under the First Amendment

The court has construed the following counts to be free exercise of religion claims arising under the First Amendment: Counts 48, 50, and 52. Defendants argue that each of these claims should be dismissed for failure to state a claim upon which relief may be granted, either because plaintiffs have failed to allege a constitutional violation or because plaintiffs are no longer entitled to the equitable relief requested. Docket 162 at 19–20.

The First Amendment protects an individual's right to freely practice religion. To sufficiently allege a denial of the free exercise of religion, an inmate must allege "both the existence of a sincerely held religious belief and the infringement upon that belief by the challenged act or regulation." *Hayes v.*

---

[8]   To the extent White intended Counts 67 to be construed as a harassment claim, the court reiterates that claims of general harassment are not cognizable under § 1983. *McDowell v. Jones*, 990 F.2d 433 (8th Cir. 1993).

*Long*, 72 F.3d 70, 73 (8th Cir. 1995) (citation omitted). The alleged infringement must be unreasonable, and the inmate must establish that such impingement was not reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

Dalrymple and White assert that their right to the free exercise of religion has been violated by defendants' refusal to allow inmates to possess particular religious items. Docket 150-1 at 52. Dalrymple also alleges that defendants have violated his religious freedom by denying him access to hardcover religious books and to religious study classes. *Id.* at 54, 56. Missing from each of these claims are facts supporting the existence of a sincerely held religious belief. In fact, the complaint does not even indicate the religion practiced by plaintiffs, let alone the sincerity of plaintiffs' religious beliefs. Because the court will not "construct a legal theory that assumes facts that have not been pleaded," *Stone*, 364 F.3d at 914, defendants are entitled to judgment on the pleadings with regard to Counts 48, 50, and 52.

## C.    Right to Correspondence Under the First Amendment

The court has construed the following counts as correspondence claims arising under the First Amendment: Counts 9, 10, 13, 51, and 66. Defendants argue that each of these claims should be dismissed for failure to state a claim upon which relief may be granted, either because plaintiffs have failed to allege a constitutional violation or because plaintiffs have failed to allege that one of the

16

named defendants was personally involved in the alleged violation. Docket 162 at 5–8, 20, 23–24.

The First Amendment protects prisoner correspondence with outsiders. *Procunier v. Martinez*, 416 U.S. 396, 408–09 (1974). Consequently, censorship of prisoner mail is unconstitutional unless "(1) the regulation or practice furthers 'an important or substantial governmental interest unrelated to the suppression of expression,' such as institutional security, and (2) 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Valiant-Bey v. Morris*, 829 F.2d 1441, 1443 (8th Cir. 1987) (quoting *Procunier*, 416 U.S. at 413). Notably, prison officials are generally not permitted to read inmates' legal mail. *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994).

In Count 9, Dalrymple asserts that his right to correspondence has been violated by defendant Nicole St. Pierre's refusal to accept particular items of incoming and outgoing nonlegal mail; in Count 10, Dalrymple alleges that defendants St. Pierre, Tammy Doyle, Travis Tjeerdsma, and Kim Lippencotte violated his right to correspondence by losing several items of outgoing mail, both legal and nonlegal in nature; in Count 13, White alleges that his right to correspondence has been violated by prison officials in the Yankton Trustee Unit who are opening his incoming legal mail; in Count 51, Dalrymple alleges that prison officials in the MDSP mail room stole an educational book that was intended for him; and in Count 66, White alleges that defendant Grossheesch

17

violated his right to correspondence by verbally harassing him when he attempted to send out legal mail. *Id.* at 70.

Defendants contend that Dalrymple's right to correspondence claims should be dismissed because Dalrymple, having been released, is no longer entitled to the equitable relief he seeks. Docket 162 at 5–6. Alternatively, defendants argue that Dalrymple's claims are more properly construed as deprivation of property claims, which are not cognizable under § 1983. *Id.* at 6. The court agrees that Dalrymple's claims related to missing items of outgoing mail are more properly construed as deprivation of property claims, and as such, are not cognizable under § 1983. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that intentional deprivations of property do not violate the Due Process Clause of the Constitution so long as there are adequate post-deprivation remedies available at the state level). Under South Dakota law, Dalrymple may bring a conversion action in state court for the alleged loss of property. Accordingly, defendants are entitled to judgment on the pleadings on Count 10 and the portion of Count 9 related to lost property.

With regard to the portion of Count 9 that alleges defendant St. Pierre denied Dalrymple incoming and outgoing nonlegal mail, the court finds that Dalrymple has stated a claim upon which relief may be granted. Dalrymple has alleged that St. Pierre censored his incoming and outgoing mail. The burden is now on St. Pierre to demonstrate "(1) the regulation or practice further[ed] 'an important or substantial governmental interest unrelated to the suppression of

18

expression,' such as institutional security, and (2) 'the limitation of First Amendment freedoms [was] no greater than [was] necessary or essential to the protection of the particular governmental interest involved.' " *Valiant-Bey v. Morris*, 829 F.2d 1441, 1443 (8th Cir. 1987) (quoting *Procunier*, 416 U.S. at 413). Defendant St. Pierre has not yet demonstrated such facts and is therefore not entitled to judgment on the pleadings with regard to Count 9.[9] *See Thibodeaux v. South Dakota*, 553 F.2d 558, 559–60 (8th Cir. 1977) ("[P]rison officials carry the burden of proving the need for censorship.").

Defendants further assert that they are entitled to judgment on the pleadings with respect to Count 13, wherein White claims that prison officials violated his constitutional rights by opening his legal mail. Docket 162 at 7. As defendants point out, White has not alleged the personal involvement of any named defendant. Notably, "liability cannot be based solely on defendants' general responsibility to oversee prison operations," because "section 1983 does not allow for supervisory liability absent personal involvement or actual knowledge." *Wilson v. Toney*, 294 F. App'x 252, 253 (8th Cir. 2008) (citations omitted); *see also Martin v. Sargent*, 780 F.3d 1334, 1338 (8th Cir. 1985) (dismissing claims for failure to allege personal involvement in or direct

---

[9] To the extent defendants argue that Count 9 should be dismissed because Dalrymple is no longer entitled to equitable relief, Dalrymple has also requested punitive and compensatory damages—relief to which he may still be entitled. *See* Docket 150-1 at 77. Dalrymple's claims for equitable relief, however, are dismissed as moot in light of his release from custody. *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978).

responsibility for alleged conduct). Defendants are therefore entitled to judgment on the pleadings with regard to Count 13.

Dalrymple characterizes Count 51 as a correspondence claim because it involves the mail. Based on the facts alleged, however, the claim is more properly construed as a deprivation of property claim, because Dalrymple alleges that officials in the MDSP mail room stole study books which had been sent to Dalrymple from the Blackstone Career Institute. Docket 150-1 at 55. Again, deprivation of property claims are not cognizable under § 1983. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that intentional deprivations of property do not violate the Due Process Clause of the Constitution so long as there are adequate post-deprivation remedies available at the state level). Because Dalrymple may bring a conversion action in state court for the alleged loss of property, defendants are entitled to judgment on the pleadings with regard to Count 51.

Finally, with regard to Count 66, defendants argue that White's claim is not cognizable under § 1983 because it merely alleges harassment. Docket 162 at 23–24. Alternatively, defendants argue that White is no longer entitled to the equitable relief he seeks because he is no longer housed at MDSP—the penal institution from which he seeks relief. To the extent White intended Count 66 to be construed as a harassment claim, the court agrees with defendants—"verbal threats are not constitutional violations cognizable under § 1983." *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (citation omitted). As a

20

correspondence claim, however, Count 66 states a claim upon which relief may be granted because White has alleged that Grossheesch opened and read White's outgoing legal mail. The Eighth Circuit has held that "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) (citation omitted). Drawing all reasonable inferences from the facts alleged in White's favor, the court finds that Grossheesch is not entitled to judgment on the pleadings with regard to Count 66.[10]

### D.      Failure to Protect Under the Eighth Amendment

The court has construed Count 69 as a failure to protect claim arising under the Eighth Amendment. Defendants argue this claim should be dismissed for failure to state a claim upon which relief may be granted because plaintiffs (1) do not allege an actual injury, (2) lack standing to bring the action, and (3) are no longer entitled to the equitable relief sought. Docket 162 at 24.

The Eighth Amendment imposes a duty on the part of prison officials to " 'take reasonable measures to [protect prisoners from] substantial risks of serious harm.' " *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (quoting *Reece*

---

[10] To the extent defendants argue that Count 66 should be dismissed because White is no longer entitled to equitable relief from MDSP, White has also requested punitive and compensatory damages—relief to which he may still be entitled. *See* Docket 150-1 at 77. White's claim for equitable relief from MDSP, however, is dismissed as moot in light of his release from MDSP's custody. *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978).

*v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995)). That duty "requires only that prison officials 'take reasonable measures to abate substantial risks of serious harm, of which the officials are aware.' " *Id.* To state a claim for failure to protect, a prisoner "must establish first, that he is incarcerated under conditions posing a substantial risk of serious harm, and second, 'deliberate indifference' to that risk." *Spruce v. Sargent*, 149 F.3d 783, 785 (8th Cir. 1998) (citation omitted). "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." *Id.* (citation omitted).

In Count 69, plaintiffs allege that prison staff neglected to place fire warning systems in Barracks 1 and 2, thereby placing inmates at a greater risk of harm than inmates housed in Barracks 3, where there is a fire warning system. Docket 150-1 at 73. Defendants assert they are entitled to judgment on the pleadings because plaintiffs do not have standing to bring an action on behalf of the 288 inmates housed in Barracks 1 and 2. Docket 162 at 24. The court agrees—"[a plaintiff] may not base his Section 1983 action on a violation of the rights of third parties." *Garrett v. Clarke*, 147 F.3d 745, 746 (8th Cir. 1998) (citing *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983)). "Claims brought pursuant to 42 U.S.C. § 1983 are 'personal action[s] cognizable only by the party whose civil rights are violated.' " *Pierzynowski v. Police Dep't of Detroit*, 941 F. Supp. 633, 640 (E.D. Mich. 1996) (quoting *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984)). Plaintiffs therefore do not have standing to bring a failure to protect claim on behalf of inmates housed in Barracks 1 and 2.

Accordingly, defendants are entitled to judgment on the pleadings with regard to Count 69.

### E.   Retaliatory Discipline Under the Eighth Amendment

The court has construed Counts 26, 28, 34, 41, 42, 44, 45, 46, and 54 as retaliatory discipline claims arising under the Eighth Amendment.[11] Defendants argue these claims should be dismissed for failure to state a claim upon which relief may be granted because plaintiffs either failed to allege an essential element of a retaliatory discipline claim or failed to allege a violation of a constitutional or statutory right. Docket 162 at 13–15, 16–19, 24.

"A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction [or otherwise take adverse action] against a prisoner in retaliation for the prisoner's exercise of his constitutional right.' " *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993)). To establish a prima facie case of retaliatory discipline, a plaintiff must show that "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009).

In Counts 26, 28, 34, 44, and 46, plaintiffs allege they were disciplined in retaliation for having filed a legal action. Docket 150-1 at 29, 31, 37, 48, 50.

---

[11] The court construed these claims as retaliatory discipline claims largely because plaintiffs specifically indicated that these counts involved retaliation.

More specifically, in Count 26, White alleges that he was denied access to legal services by defendants Robert Dooley and Jennifer Stanwick due to pending litigation against those individuals; in Counts 28, 44, and 46, Dalrymple alleges he was denied access to the law library by defendants Tammy Doyle, Lori Drotzman, Robert Dooley, and Jennifer Stanwick due to pending litigation against those individuals; and in Count 34, White alleges that defendant Lt. Sestak confiscated legal documents.

With respect to the first element, it is well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The court therefore concludes that plaintiffs have sufficiently alleged the first element of a retaliatory discipline claim. The court also finds that plaintiffs have sufficiently alleged the second element of a retaliatory discipline claim by asserting that defendants denied him access to legal services, the law library, and legal documents. To satisfy the third element of a retaliatory discipline action, plaintiffs were required to allege facts to show that, but for a retaliatory motive, defendants would not have denied plaintiffs access to legal services, the law library, and legal documents. *Haynes*, 588 F.3d at 1156. In Counts 26, 28, 44, and 46, plaintiffs have indicated that the motive for discipline was pending litigation against the named defendants. Although it is possible that plaintiffs were actually denied access to legal services and the law library for legitimate, non-retaliatory reasons, the court

24

must construe all factual allegations in plaintiffs' favor. Thus, defendants are not entitled to judgment on the pleadings with regard to Counts 26, 28, 44, and 46.[12] Defendants are entitled to judgment on the pleadings, however, with regard to Count 34, because White failed to alleged that pending litigation was defendant Sestak's motivation for confiscating White's legal documents.

In Counts 41, 42, and 45, plaintiffs assert they are being harassed in retaliation for having filed a legal action. Docket 150-1 at 45–46, 49. More specifically, in Count 41, plaintiffs allege that defendant Nancy Christianson "started giving [plaintiff] a hard time about access to the law library; in Count 42, White alleges that defendant C. Grossheesch "made [a] threat in order to harass [him] out of retaliation for naming her in suit;" and in Count 45, Dalrymple alleges that defendant Drotzman "is using her power as the 'clerk' to scold [him] for preparing legal documents . . . because of pending litigation." Because claims of general harassment are not cognizable under § 1983, defendants are entitled to judgment on the pleadings with regard to Counts 41, 42, and 45. *McDowell v. Jones*, 990 F.2d 433 (8th Cir. 1993); *see also Martin*, 780 F.2d at 1338 ("[V]erbal threats are not constitutional violations cognizable under § 1983." (citation omitted)).

---

[12] Insofar as defendants argue that these retaliatory discipline claims should be dismissed for failure to allege an actual injury, under Eighth Circuit case law, "[a]n inmate 'need not show a separate, independent injury as an element of his case' because 'when retaliatory conduct is involved, there is no independent injury requirement.' " *Id.* (quoting *Dixon v. Brown*, 38 F.3d 379, 379–80 (8th Cir. 1994)).

Lastly, Dalrymple characterizes Count 54 as a retaliation claim. Therein, Dalrymple alleges that defendant Diane Romkema interrupted a conversation he was having with Correctional Officer Matt Fitch. Docket 150-1 at 58. "Because of the actions of Ms. Romkema, [Dalrymple] was unable to complete a conversation which could prevent [him] from being in violation of prison policy." Dalrymple believes Romkema's alleged actions toward Dalrymple were in retaliation for the fact that Romkema had been named in pending litigation. The court is unaware of a constitutional right to uninterrupted conversation, and therefore finds that Count 54 is frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (noting that a court may dismiss a claim as frivolous when it is "based on an indisputably meritless legal theory"). Accordingly, defendants are entitled to judgment on the pleadings with regard to Count 54.

### F.   Deliberate Indifference to Serious Medical Needs Under the Eighth Amendment

The court has construed Counts 23 and 59 as claims arising under the Eighth Amendment's protection against deliberate indifference to serious medical needs. Defendants assert they are entitled to judgment on the pleadings with regard to both of these claims because plaintiffs have failed to allege a serious medical need. Docket 162 at 12–13, 22.

"A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.' " *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) (quoting *Estelle*, 429 U.S. at

26

106). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. More specifically, a prisoner must allege " '(1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.' " *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). To demonstrate deliberate indifference, " '[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.' " *Jolly*, 205 F.3d at 1096 (quoting *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (citing *Estelle*, 429 U.S. at 104–05).

27

In Count 23, Dalrymple alleges that despite "uncontrollable vomititing [sic] and other bodly [sic] functions," including an "exteme [sic] temp," prison policy prevented him from seeing a nurse. Docket 150-1 at 26. Dalrymple further alleges that the medical staff was aware of his condition because he had sent a kite to defendant Henvey. Assuming these facts are true and drawing all reasonable inferences from those facts in Dalrymple's favor, the court finds that Dalrymple has stated a claim upon which relief may be granted under the Eighth Amendment. First, Dalrymple has alleged that he experienced uncontrollable vomiting and extreme temperatures over the course of a weekend. Defendants assert that these conditions do not constitute a serious medical need, but defendants provide no support for that assertion. Although "one incident of vomiting does not necessarily rise to the level of a serious medical need," *Mahamed v. Anderson*, Civ. No. 07-4815, 2009 WL 873534, at *5 (D. Minn. Mar. 30, 2009) (citations omitted), uncontrollable vomiting coupled with a high fever for several days may constitute a medical need that is so obvious even a layperson would easily recognize the necessity for a doctor's attention. Second, Dalrymple has alleged that defendant Henvey was notified of Dalrymple's condition but failed to respond. Accordingly, the court finds that Dalrymple has stated a claim upon which relief may be granted, and defendants are not entitled to judgment on the pleadings with regard to Count 23.

In Count 59, White alleges that defendant Henvey "has failed his obligation to provide [White] the care [he] need[s]." Docket 150-1 at 63. Despite White's complaints of muscle problems and issues with his lungs and breathing, White has received no testing or medication related to his medical needs. Assuming these facts are true and drawing all reasonable inferences from those facts in White's favor, the court finds that White has failed to state a claim upon which relief may be granted under the Eighth Amendment. Even assuming White has alleged that Henvey acted with deliberate indifference toward White's medical need, White has not alleged that his medical conditions were either diagnosed as requiring treatment or so obvious that even a layperson would recognize the necessity for a doctor's attention. Accordingly, defendants are entitled to judgment on the pleadings with regard to Count 59.

## G.     Prison Conditions Under the Eighth Amendment

The court has construed the following counts as prison condition claims arising under the Eighth Amendment: Counts 3, 4, 12, 20, 30, 53, 55, and 58. Defendants assert they are entitled to judgment on the pleadings because each of these counts fails to state a claim upon which relief may be granted, either because plaintiffs are no longer entitled to the equitable relief sought, because plaintiffs lack standing, or because plaintiffs fail to allege one or both of the elements of a prison condition claim. Docket 162 at 4–7, 11, 14, 21–22.

To sufficiently allege that conditions of confinement violate the Eighth

Amendment, a prisoner must assert the following:

> (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that the officials actually knew of and disregarded the risk.

*Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*,

511 U.S. 825, 834 (1994)). Nonetheless, "the Constitution does not mandate

comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

Therefore, with regard to the first element, a prison condition is not deemed

cruel and unusual unless it "inflicts unnecessary or wanton pain or is grossly

disproportionate to the severity of the crime warranting imprisonment." *Id.* at

348; *see also Rhodes*, 452 U.S. 337 at 347 ("To the extent that such conditions

are restrictive or even harsh, they are part of the penalty that criminal

offenders pay for their offenses against society."). With regard to the second

element, "constructive knowledge, or the 'should have known' standard, is not

sufficient to support a finding of deliberate indifference . . . ." *Spruce v.*

*Sargent*, 149 F.3d 783, 786 (8th Cir. 1988) (citing *Farmer*, 511 U.S. at 837).

"Absent a showing that the prison officials consciously understood that prison

conditions created such an excessive risk, the conditions are not a punishment

within the meaning of the Eighth Amendment." *Williams*, 49 F.3d at 445 (citing

*Farmer*, 511 U.S. at 837).

30

In the instant case, Dalrymple makes four prison conditions claims independent of White. In Count 3, Dalrymple alleges that the poor air quality in the barracks and other SDDOC buildings caused him illness and lung problems. Docket 150-1 at 6. In Count 4, Dalrymple alleges that defendants Dooley, Jacobs, and Stanwick subjected him to "nonhuman tempatures [sic]," causing him to suffer a body rash, heat bumps, vomiting, heat stroke, and other illnesses. *Id.* at 7. In Count 53, Dalrymple alleges that prison officials prevented him from purchasing thermal wear, causing him to get physically ill from exposure. *Id.* at 57. Lastly, in Count 58, Dalrymple alleges that he has been denied the opportunity to purchase a personal hot-water pot from commissary, thus causing him to run out of hot water. *Id.* at 62.

With respect to Counts 3, 4, 53, and 58 defendants assert that Dalrymple is no longer entitled to the equitable relief sought because he has been released from custody. Docket 162 at 4–5, 21. Although it is true that Dalrymple's claims for equitable relief are moot in light of his release from MDSP, *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978), Dalrymple may still be entitled to the punitive and compensatory damages requested in his prayer for relief (Docket 150-1 at 77). Consequently, defendants' argument fails insofar as it relies upon Dalrymple's release from MDSP.

Alternatively, defendants assert they are entitled to judgment on the pleadings with respect to Counts 3 and 4 because Dalrymple does not have

31

standing to assert rights on behalf of third parties. This is also true, *see Garrett*, 147 F.3d at 746 (citation omitted), but the argument is insufficient to warrant judgment on the pleadings with regard to Dalrymple's claim that poor air quality and "nonhuman" temperatures caused him personal injury. Defendants are therefore not entitled to judgment on the pleadings on Counts 3 and 4.

As for Counts 53 and 58, defendants alternatively assert that Dalrymple has failed "to allege a deprivation that is so serious that it results 'in the denial of the minimal civilized measure of life's necessities' [or] . . . posed an excessive risk to his health or safety." Docket 162 at 21 (quoting *Farmer*, 511 U.S. at 834). The court agrees. The inability to purchase a particular type of winter clothing or a personal hot-water pot does not amount to an objectively serious deprivation resulting in the denial of the minimal civilized measure of life's necessities. Accordingly, defendants are entitled to judgment on the pleadings with regard to Counts 53 and 58.

White makes one prison conditions claim separate from Dalrymple. In Count 30, White alleges that defendant Grossheesch "denied [him] the ability to change out [his] shoes," which were "coming apart" and "could not be used because the bottom came off and the shoes were unrepairable." Docket 150-1 at 33. Defendants argue that White has failed to allege a sufficiently serious deprivation of the minimal civilized measure of life's necessities. Docket 162 at 14. The court agrees and finds that White has also failed to demonstrate that

32

the alleged constitutional violation poses an excessive risk to his health or safety. Accordingly, defendants are entitled to judgment on the pleadings with regard to Count 30.

In Counts 12, 20, and 55, both Dalrymple and White assert that defendants violated the Eighth Amendment by (1) failing to maintain a law library that is free of rodent waste (Count 12), (2) failing to provide both hot water and clean drinking water (Count 20), and (3) overcrowding the barracks and preventing inmates from exercising (Count 55). With regard to Count 12, defendants argue that Dalrymple and White have failed to allege the essential elements of a prison conditions claim. Docket 162 at 6–7. The court agrees—even assuming that rodent waste constitutes a sufficiently serious deprivation, plaintiffs have failed to allege that defendants knew of and disregarded the risk posed by such deprivation. Accordingly, defendants are entitled to judgment on the pleadings with regard to Count 12.

Finally, defendants argue that plaintiffs lack standing to bring Counts 20 and 55 because plaintiffs have failed to allege that they were personally injured by defendants' alleged failure to provide inmates with clean drinking water or by the overcrowding of barracks. The court agrees. In Count 20, plaintiffs generally allege that inmates in the B-2 pod of the barracks were deprived of clean drinking water. Plaintiffs do not, however, allege that they were among the inmates in the B-2 pod. "Claims brought pursuant to 42

33

U.S.C. § 1983 are 'personal action[s] cognizable only by the party whose civil rights are violated.' " *Pierzynowski*, 941 F. Supp. at 640 (quoting *Jaco*, 739 F.2d at 242). Plaintiffs therefore do not have standing to bring Count 20, and defendants are entitled to judgment on the pleadings with regard to that claim.

In Count 55, however, plaintiffs do allege personal injury by noting that they were personally subjected to overcrowding when each of them was confined "to a 3.5' by 12' area without being allowed to use the buildings [sic] day hall or the prisons [sic] REC time." Docket 150-1 at 59. Defendants' argument regarding standing therefore fails, as does the argument that Dalrymple and White are no longer entitled to the equitable relief sought. Although it is true that plaintiffs' claim for equitable relief as it relates to Count 55 is moot in light of their release from MDSP, *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978), plaintiffs may still be entitled to the punitive and compensatory damages requested in the prayer for relief (Docket 150-1 at 77). Accordingly, defendants are not entitled to judgment on the pleadings with regard to Count 55.

### H.    Equal Protection Under the Fourteenth Amendment.

The court has construed the following counts as equal protection claims arising under the Fourteenth Amendment: Counts 7, 8, 35, and 58. Defendants assert they are entitled to judgment on the pleadings because each of these counts fails to state a claim upon which relief may be granted, either because plaintiffs are no longer entitled to the equitable relief sought or

because plaintiffs fail to allege the essential elements of an equal protection claim. Docket 162 at 5, 15–16, 21–22.

As previously set forth, to invoke the protections of the Equal Protection Clause, a plaintiff must "allege he was a member of a protected class or that a fundamental right was violated." *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). If neither of those elements can be alleged, a plaintiff must allege "that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990)).

In Counts 7 and 8, Dalrymple alleges that defendants Tjeerdsma and Stanwick have denied him access to paralegal courses at the Blackstone Career Institute and business management courses at the Stratford Career Institute. Docket 150-1 at 10–11. Dalrymple further alleges that other inmates are allowed to participate in these courses, but that his requests are denied. Defendants argue they are entitled to judgment on the pleadings with regard to Counts 7 and 8 because Dalrymple is no longer entitled to the equitable relief sought. Docket 162 at 5. Although it is true that Dalrymple's claims for equitable relief are moot in light of his release from custody, *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978), Dalrymple may still be entitled to the punitive and compensatory damages requested in his prayer for relief (Docket 150-1 at 77). Consequently, defendants' argument fails with regard to Counts 7

35

and 8, and defendants are not entitled to judgment on the pleadings on those equal protection claims.

In Count 35, plaintiffs[13] allege that defendant Dooley denied them equal protection of the law by refusing to respond to their kites. Defendants argue that they are entitled to judgment on the pleadings with regard to this claim because plaintiffs have failed to allege that they are being treated differently than a similarly situated class of inmates or that the treatment burdens their fundamental rights. Docket 162 at 15–16. The court agrees this is the standard, but plaintiffs have alleged they were treated differently than similarly situated individuals. According all reasonable inferences from those facts to plaintiffs and seeing no evidence that the difference in treatment bears a rational relation to a legitimate penal interest, the court finds that plaintiffs have alleged an equal protection claim. Defendants are therefore not entitled to judgment on the pleadings with regard to Count 35.

## I.    Due Process Under the Fourteenth Amendment

The court has construed Count 61 as a due process claim arising under the Fourteenth Amendment. Prisoners are entitled to the protections of the Fourteenth Amendment's Due Process Clause–"[t]hey may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (citations omitted). With respect to disciplinary matters within

---

[13] Count 35 does not indicate which plaintiff suffered the alleged constitutional violation.

the prison, "[t]he Supreme Court has outlined procedures correctional facilities must follow to conduct an impartial due process hearing." *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008).

In Count 61, White alleges that defendant Romkema accused him of being in a room other than his own, which was grounds for a disciplinary write-up. Although White admits he was found in a room other than his own, he claims he was doing his job as a "wheelchair pusher." Nonetheless, White was denied an "honest review" of the disciplinary write-up and placed in confinement for ten days. Defendants argue that the facts asserted in Count 61 represent either a "right to work" or retaliatory discipline claim, and as such, fail to state a claim upon which relief may be granted. Docket 162 at 22-23. The court, however, maintains that Count 61 contains sufficient facts to support a due process claim—prisoners are entitled to impartial due process hearings on disciplinary matters, and White alleges that he was denied an "honest review" of a disciplinary write-up.[14] Accordingly, defendants are not entitled to judgment on the pleadings on Count 61.

### J.    Miscellaneous Claims under § 1983

The court was unable to classify Counts 21 and 65. In Count 21, Dalrymple alleges that defendant Romkema denied him information about a

---

[14] White alleged similar facts in his original complaint. Docket 1 at 45–47. At screening, the court found that the facts alleged therein were sufficient to support due process claims. Docket 103 at 37.

"federal program which is designed for inmates to re-enter society." Docket 150-1 at 24. In Count 65, Dalrymple and White state that they "stand together in the unjustifiable punishment of inmates who are selected by correctional officers for targeted punishment and write-ups." *Id.* at 69.

Defendants argue they are entitled to judgment on the pleadings on Count 21 because Dalrymple fails to assert the violation of a constitutional right. Docket 162 at 11-12. As previously set forth, the court may dismiss a claim as frivolous when it is "based on an indisputably meritless legal theory" or where the factual contentions "are clearly baseless." *Neitzke*, 490 U.S. at 327. Because the court is unaware of a constitutional right to information about federal programs, the court finds that Count 21 is frivolous. Defendants are therefore entitled to judgment on the pleadings with regard to Count 21.

Defendants assert they are entitled to judgment on the pleadings on Count 65 because plaintiffs fail to meet the pleading requirements of Fed. R. Civ. P. 8(a)(2). Docket 162 at 23. As previously set forth, the Federal Rules of Civil Procedure specifically require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, plaintiffs must set forth "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Here, plaintiffs have provided no more than a conclusory statement—they "stand together in the unjustifiable punishment of inmates who are selected by correctional officers for targeted punishment and

write-ups." These facts do not state a claim showing that plaintiffs are entitled to relief, and the court will not "construct a legal theory that assumes facts that have not been pleaded." *Stone*, 364 F.3d at 914 (citation omitted). Defendants are therefore entitled to judgment on the pleadings with regard to Count 65. Accordingly, it is

ORDERED that defendants' motion for judgment on the pleadings (Docket 161) is granted in part and denied in part. Defendants are entitled to judgment on the pleadings on the following counts: 2, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 24, 27, 29, 30, 31, 32, 33, 34, 36, 37, 39, 41, 42, 45, 48, 49, 50, 51, 52, 53, 54, 58, 59, 64, 65, 67, 68, 69, and 70. Such claims are dismissed from plaintiffs' second amended complaint (Docket 150-1).

IT IS FURTHER ORDERED that defendants Trevor Pasch, Greg Kathan, Lane Schryvers, Joshua Klimec, Diane Romkema, Jerrame Larson, Caption Doyle, Ms. Marrow, and Deb Eilers are dismissed from this action.

IT IS FURTHER ORDERED that defendants' motion for extension of time to file a motion for summary judgment based on qualified immunity (Docket 161) is granted. Defendants will have until **Monday, April 28, 2014**, to file their motion for summary judgment.

Dated March 25, 2014.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

39