UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

SEP 11 2014

CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| | * | |
| DANIEL R. DALRYMPLE and | * | CIV. 12-4098 |
| LESLIE W. WHITE, JR., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | REPORT AND |
| | * | RECOMMENDATION |
| ROBERT DOOLEY, Warden; | * | |
| JENNIFER STANWICK-KLIMEK, | * | |
| Associate Warden; | * | |
| SUSAN JACOBS, Associate Warden; | * | |
| LELAND TJEERDSMA, Major, Special Security; | * | |
| JACQUELINE PETERS, Sergeant; | * | |
| NICOLE ST. PIERRE, Mail Room; | * | |
| CORY NELSON, Mental Health; | * | |
| TOM GILCHRIST, Mental Health; | * | |
| MATT FITCH, Laundry; | * | |
| TRAVIS TEERDSMA, Unit Coordinator; | * | |
| TAMMY DOYLE, Unit Manager; | * | |
| LORI DROTZMAN, GED Teacher; | * | |
| KIMBERLY LIPPINCOTT, Case Manager; | * | |
| SUNNY WALTER, Attorney; | * | |
| JAMES HALSEY, C.A.C. Library; | * | |
| GARY CHRISTENSEN, Unit Manager; | * | |
| NANCY CHRISTENSEN, Unit Manager; | * | |
| MARK BIDNE, Paralegal; | * | |
| CARLA GROSSHUESCH, Unit Coordinator; | * | |
| MICHAEL HANVEY, Physician Assistant; | * | |
| TERRY ROMKEMA, Corporal; | * | |
| MICHAEL GROSSHUESCH, Lieutenant; | * | |
| GARY AVDOYAN, Correctional Officer; | * | |
| DANIEL SESTAK, Lieutenant; | * | |
| MARK PISCHEL, Correctional Officer; | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending is the defendants' joint motion for summary judgment (Doc.167).

## BACKGROUND

On initial screening the court described plaintiffs' allegations as follows:

Dalrymple and White make several claims, some independently, and others jointly.

Dalrymple and White claim that defendants (1) denied plaintiffs access to the courts in violation of the First Amendment; (2) denied plaintiffs the right to correspondence in violation of the First Amendment; (3) denied plaintiffs freedom of religion in violation of the First Amendment; (4) subjected plaintiffs to cruel and unusual prison conditions in violation of the Eighth Amendment; (5) denied plaintiffs access to medical care in violation of the Eighth Amendment; (6) engaged in retaliatory conduct in violation of the Eighth Amendment; (7) violated plaintiffs' Fourteenth Amendment right to equal protection; and (8) violated plaintiffs' Fourteenth Amendment right to due process. Docket 1 at 10–65. To remedy these alleged constitutional violations, Dalrymple and White have made twenty-five requests for relief, including compensatory and punitive damages. Id. at 67–68.

(Doc. 103, p. 6).

On initial screening Counts 2, 3, 6, 7, 9, 10, 14, 25, 26, 27, 32, 33, 36, 37, 38, 39, 40, 44, and 56 survived (Doc. 103, p. 38). Dalrymple/White filed an amended complaint (Doc. 107) which defendants answered (Doc. 111). Simultaneously defendants filed a motion for judgment of the pleadings on behalf of some defendants (Doc. 112) which was granted (Doc. 157, p. 11). In the same Order (Doc. 157, pp. 111-112) plaintiffs' motions for preliminary injunction (Doc. 116 & 119) were denied; plaintiffs' motion for appointment of counsel (Doc. 143) was denied; plaintiffs' motion to compel discovery (Doc. 149) was denied; and plaintiffs' motion to amend the complaint (Doc. 150) was granted.

Defendants have filed a motion for summary judgment (Doc. 167), a statement of facts (Doc. 167-1), memorandum in support of their motion (Doc. 168), together with 17 affidavits: #1 Affidavit Jennifer Stanwick-Klimek, # 2 Affidavit Matt Fitch, # 3 Affidavit Susan Jacobs, # 4

2

Affidavit Tom Gilchrist, # 5 Affidavit Cory Nelson, # 6 Affidavit Michael Joe Hanvey, # 7 Affidavit

Misty Tolsma, # 8 Affidavit Nancy Christensen, # 9 Affidavit Jackie Peters, # 10 Affidavit Travis

Tjeerdsma, # 11 Affidavit James Halsey, # 12 Affidavit Kim Lippincott, # 13 Affidavit Nicole St.

Pierre, # 14 Affidavit Robert Dooley, # 15 Affidavit Carla Grosshuesch, # 16 Affidavit Tammy

Doyle, and # 17 Affidavit Lori Drotzmann.

Dalrymple was released on parole on April 22, 2013, and White was released on parole on

May 1, 2014 (Doc. 167-1, p. 2, ¶ 1 & 2, Statement of Facts).  Dalrymple and White have filed

nothing to resist the motion for summary judgment.

## DISCUSSION

### Summary Judgment Standard.

The court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P.

56(a).  A party asserting that a fact is genuinely disputed must support the assertion by showing that

the materials cited do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(B).

If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the

court may grant summary judgment if the motion and supporting materials—including the facts

considered undisputed— show that the movant is entitled to it. FED. R. CIV. P. 56(e)(3).

The record must be viewed in a light most favorable to the non-moving party. *Stone Motor

Company v. General Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002).  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986).  The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct.

at 2510. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Id.* at 247, 106 S.Ct. at 2509-10. Once the moving party has met its burden, the non-moving party must set forth specific record facts showing that a genuine issue of material fact exists. *Stone Motor Company*, 293 F.3d at 465. Additionally, a district court has no obligation to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Nor is the court "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.*

### Analysis.

Because Dalrymple and White have filed nothing to resist the defendants' joint motion for summary judgment, they have failed to address the defendants' assertions of fact as required by Rule 56(c). As a consequence the same Rule provides the court may grant summary judgment if the defendants' motion and supporting materials show the defendants are entitled to it. Defendants' statement of the facts is undisputed.

### 1.    Official Capacity Claims.

Defendants correctly address plaintiff's claims against defendants' in their official capacities:

Plaintiffs have sued all Defendants in their official capacities. The United States Supreme Court has held an action against a state official in his or her official capacity is the same as a suit against the State itself. See *Will v.Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304,2312, 105 L.Ed.2d 45 (1989). The State, however, has immunity from such actions underthe Eleventh Amendment. The Supreme Court has held "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 170,105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). There has been no waiver of immunity by the State and therefore, Plaintiffs'

4

claims for damages resulting from Defendants' actions in their official capacities are barred.

Doc. 168, p. 3.

### 2.    Exhaustion of Administrative Procedures.

Plaintiffs admit in their complaint that they did not exhaust their administrative remedies.

42 U.S.C. § 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The prisoner must exhaust his administrative remedies even if the precise relief he seeks in his § 1983 lawsuit is not available through the prison grievance system. *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 1824, 149 L.Ed.2d 958 (2001). Also, although § 1997e(a) refers to "prison conditions," the United States Supreme Court has interpreted that phrase to mean "the PRLA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 992, 152 L.Ed.2d 12, (2002). " . . [A] remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a) . . . " *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)(internal punctuation and citations omitted). An inmate's subjective belief or prediction that he will not be successful does not render his administrative remedies unavailable and does not relieve him from his obligation to exhaust. *Lyon v. Vande Krol*, 305 F.3d 806, 809-10 (8th Cir. 2002).

Defendants acknowledge plaintiffs' assertion that plaintiffs have been denied unfettered access to the grievance procedure at the prison (Doc. 168, p. 4.). Defendants explain, however, the

denial was a sanction in March of 2012 for plaintiffs' abuse of the grievance system. After the sanction was imposed plaintiffs were still allowed to use the grievance system if they first sought permission from their unit manager and the associate warden of the prison. Plaintiffs have not asserted that they ever asked permission and were denied access to the grievance procedure about any of the claims in their lawsuit. Furthermore, the sanction was lifted a few months after it was imposed (Doc. 168, p. 4). Plaintiffs have neither exhausted the administrative procedures nor provided a legitimate reason for their failure to exhaust the administrative procedure regarding any of their claims in this lawsuit.

### 3.   Qualified Immunity.

#### (a)   The Doctrine.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines. Qualified immunity will be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, . . . . The qualified immunity standard gives ample room for mistaken judgments by protecting all but . . . those who knowingly violate the law. *Ambrose v. Young*, 474 F.3d 1070 (8th Cir. 2007)(internal quotations and citations omitted). Hence, "[q]ualified immunity, shields government officials from § 1983 damage liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gardner v. Howard*, 109 F.3d 427, 429 (8th Cir. 1997). . . . "[Q]ualified immunity is an immunity from suit rather than a mere defense to

6

liability, and . . . it is effectively lost if a case is erroneously permitted to go to trial. For this reason, the district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision under the collateral order doctrine notwithstanding the absence of a final judgment." *Johnson v. Hay*, 931 F.2d 456, 459 (8th Cir. 1991)(internal quotations and citations omitted).

### (b)    The Test.

"We analyze the officials' qualified immunity claims in two steps. First, viewing the facts in the light most favorable to [plaintiff], we ask whether the official's conduct violated a constitutional right. If the answer is no, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if the answer is yes, we must determine whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Ambrose v. Young,* 474 F.3d 1070, 1077 (8th Cir. 2007). This procedure of first determining whether there has been a constitutional violation is often appropriate, but not mandatory. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the particular circumstances in the particular case at hand." *Id.*

### (1)    Eighth Amendment - Excessive Force.

Defendants correctly address this issue:

Count 1 alleges that Officer Matt Fitch threw an unknown object at Dalrymple resulting in a bruise on Dalrymple's back. Defendants construe the claim as one alleging excessive force in violation of his Eighth Amendment rights.

7

> To demonstrate a violation of the Eighth Amendment, Dalrymple must prove that "the deprivation of rights was sufficiently serious." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Dalrymple must also "prove that [Officer Fitch] had a 'sufficiently culpable state of mind." *Irving*, 519 F.3d at 446 (quoting Farmer, 511 U.S. at 834, 114 S.Ct. at 1977).

Doc. 168, p. 5.

Because Dalrymple did not dispute defendants' statement of fact that Fitch did not throw any object at Dalrymple there is no fact in the record to support the allegation in the complaint that Fitch threw an object at Dalrymple which caused a bruise (Doc. 167, p. 6, ¶ 20). Consequently, it is established without dispute that Fitch did not throw an object at Dalrymple so that the defense is entitled to judgment in its favor as a matter of law on this claim.

### (2)   Eighth Amendment Conditions of Confinement.

Defendants correctly state the elements of proof:

> To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, objectively, sufficiently serious,' resulting 'in the denial of the minimal civilized measure of life's necessities,' and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety, meaning that the officials actually knew of and disregarded the risk. *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 at 1979).

Doc. 168, p. 5 (quotation marks omitted).

### A.   Air Quality and Heat.

The constitution does not mandate comfortable prisons. *Farmer*, 511 U.S. at 832, 114 S.Ct. at 1976. Dalrymple alleges he was subjected to poor air quality and extreme heat. Defendants have established that the barracks where Dalrymple was housed was equipped with six constant volume air handling units configured with automatic economizer dampers that mix outdoor air with return

8

air. The proportion of outdoor air to indoor air is adjusted based on temperatures inside and outside the barracks. Many portable and fixed fans move the air inside the barracks. The library, visit room, various classrooms, and medical building are air-conditioned. If an inmate suffers from a severe medical condition that is exacerbated by the heat, air-conditioned rooms are provided upon an order from a physician. Furthermore, all the windows in the building were operable and could be opened to let in fresh air. The office of the State Engineer inspected the system and concluded the equipment was in good operating condition and the officials were operating it satisfactorily. Inmates could also go outside during designated times. The conditions are carefully monitored by prison staff. The temperature rarely exceeds 94 degrees (Doc. 168, p. 7-8). There has not been a violation of Dalrymple's constitutional right to humane conditions during confinement.

## B. Overcrowding.

Dalrymple and White allege that they have been subjected to cruel and unusual punishment by overcrowding, i.e. by being placed on cell restriction along with a third inmate. Mike Durfee State Prison is a low-medium security prison having been converted from a college campus. Inmates are assigned rooms for sleeping. Most of the time inmates are not in their rooms unless they are placed on cell restriction. "Cell restriction" is actually "room restriction" and means the prisoner cannot participate in recreation time or attend day hall. The inmate may still receive visits and attend worship services, classes, and work. Additionally, the inmate may leave his room for meals and to use the bathroom. At no time were Dalrymple and White placed on room restriction at the same time as each other or the third inmate named in their complaint. MDSP has an approved operational capacity of 1,260 beds and a maximum capacity of 1,334 beds including the Special Housing Unit (SHU) and infirmary. MDSP has never exceeded its maximum capacity. Dalrymple and White must

9

demonstrate an objectively, sufficiently serious deprivation which results a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347,101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Dalrymple and White have not been denied the minimal civilized measure of life's necessities by being placed in a college dorm room which sleeps three.

## C.    Intercom System.

Dalrymple claims hearing loss, ringing in his ears and headaches from the intercom system. The system is used to make announcements and page inmates to appointments. While it is understood that constant blaring from an intercom system could be an annoyance, Dalrymple has not produced facts to show he has suffered an injury or that any prison official has been deliberately indifferent to an excessive risk to inmate safety or health or that he has been subjected to cruel and unusual punishment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety .... " *Wilson v. Seiter*, 501 U.S. 294, 298-99, quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986). There are no facts to support Dalrymple's claim of hearing loss, ringing in his ears or headaches caused by the use of the intercom system.

## D.    Poor Lighting.

Dalrymple claims poor, fluorescent lighting caused difficulty with his eyesight and headaches.[1] There is no fact in the record to support this claim other than his conclusory allegation in his complaint. Dalrymple must demonstrate that he was denied the minimal civilized measure of

---

[1]Parenthetically, it is not understood how Dalrymple differentiates headaches caused by the intercom system from headaches caused by poor lighting.

life's necessities. *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977; *Rhodes v. Chapman*, 452 U.S. 337, 347,101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Dalrymple has not done so.

### (3)   Eighth Amendment Medical Needs.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. A prisoner's allegation of inadequate medical attention was recognized as a potentially viable claim for a violation of the prohibition against cruel and unusual punishment, via a § 1983 cause of action, in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a cause of action, the prisoner must sufficiently allege "deliberate indifference" to a prisoner's "serious illness or injury." *Id.*, 429 U.S. at 105, 97 S.Ct. at 291. "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.*

With regard to the "deliberate indifference" requirement, the courts have made clear that mere negligence or medical malpractice is not enough. *Id.*, 497 U.S. at 107, 97 S.Ct. at 293. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). And, prison officials may also avoid liability if they "responded reasonably to the risk, even if the harm ultimately was not averted." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (citation omitted). Also, "repeated negligent acts indicating systemic deficiencies in the method of providing medical care" may amount to deliberate indifference. *DeGidio v. Pung*, 920 F.2d 525, 532 (8th Cir. 1990).

To prevail on a claim of deliberate indifference, a plaintiff must prove: (1) he suffered objectively serious medical needs and; (2) the prison officials actually knew but deliberately

11

disregarded those needs. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). To show deliberate indifference, the plaintiff must show prison officials "knew of, yet disregarded, an excessive risk to [his] health." *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997) (citations omitted). A prisoner's bare assertion or self-diagnosis alone, however, is insufficient to establish the existence of a medical condition. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). "When an injury is sophisticated, proof of causation generally must be established by expert testimony. A causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs. However, when the injury is a sophisticated one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony." *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002).

Also, "[c]ertainly physicians do not, and should not, necessarily accept as true the medical judgments offered by their patients. They must make treatment decisions on the basis of a multitude of factors, only one of which is the patient's input." *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990). In *Givens*, the defendant prison doctor was granted qualified immunity even though he prescribed a drug to an inmate after the inmate claimed to be allergic to it, and the inmate claimed that as a result of ingesting the drug, he suffered tremors and seizures. Additionally, a prison doctor is entitled to exercise his medical judgment, and does not violate the Eighth Amendment merely by disagreeing with, or pursuing a course of treatment different than the attending physician. *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993).

"Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment,

they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). A prisoner's difference of opinion over matters of expert medical judgment or a prescribed course of treatment does not rise to the level of a constitutional violation. *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981). The Eighth Circuit has also noted that a prison health care system's failure to provide treatment that is "as extensive as a private health care provider" might have offered does not rise to the level of deliberate indifference. *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997).

"When an inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of the delay." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(internal punctuation and citations omitted). "Specifically, the inmate must present verifying medical evidence that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis." *Liggins v. Barnett*, 2001 WL 737551 at p. 7 (S.D. Ia. 2001)(internal punctuation and citations omitted). *See also Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998)(delay in treating inmate's broken hand made surgery impractical; even though delay may have amounted to negligence, "more must be shown to establish a constitutional violation. There must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness.").

There is no respondeat superior liability for supervisors with regard to prisoner deliberate indifference claims. "A general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Prison officials who lack medical expertise cannot be held liable for the diagnostic decisions of medical staff. *Id.*

13

### A.   Denial Of Request For Medical Help.

Dalrymple alleges that he was denied adequate medical care by Tom Gilchrist and Cory Nelson when they denied his request to visit him. He alleges that he has a history of self-harm and sent a request for assistance. Dalrymple alleges neither responded to his kites. The undisputed fact is neither Gilchrist nor Nelson received a kite from Dalrymple requesting help because he was experiencing ideas of suicide or self-harm. The fact is that Gilchrist and Nelson responded to most of Dalrymple's kites with face-to-face meetings. Gilchrist and Nelson further confirm that any inmate who expressed feelings of self-harm or suicide would be seen immediately by staff. "Deliberate indifference must be measured by the official's knowledge at the time in question[.]" *Schaub v. Von Wald*, 638 F.3d 905, 915 (8th Cir. 2011). The record is that Gilchrist and Nelson did not deny a request from Dalrymple for medical help because they did not receive a request from Dalrymple.

### B.   Failure To Provide Weekend Medical Assistance.

Dalrymple alleges his rights under the Eighth Amendment were violated when he became ill over a weekend and sent a kite to physician assistant, Joe Hanvey, at MDSP. It is highly unusual for P.A. Hanvey to receive kites from inmates. If an inmate becomes ill during a weekend, the usual procedure is that the inmate informs the guard who will then assist the inmate to the medical unit. The record is that P.A. Hanvey did not receive a kite from Dalrymple, so he did not deny a request from Dalrymple for medical help.

### C.   Eyestrain.

Dalrymple claims he repeatedly was denied treatment and forced to subject his eyes to unjust strain. There is no fact in the record to show Dalrymple's eye strain rose to the level of a serious

14

medical condition. The record is that Dalrymple broke his glasses, was seen by medical staff on March 2, 2011 and referred to optometry for an evaluation. Dalrymple then received new eye glasses. There is no fact in the record to show either that his eye strain was a serious medical condition or that any prison official was deliberately indifferent to his eye strain.

### D.    Eyeglasses.

White alleges his eyeglasses were taken from him leaving him unable to see clearly. The record is that Nancy Christensen, White's Unit Manager, received a report that a pair of eye glasses had been stolen. She and another correctional officer searched White's cell. Christensen found a pair of glasses which were not listed on White's property inventory list in White's cell. The glasses found by Christensen, however, were not state-issued and did not belong to White. White has state-issued glasses. The record is that White's glasses were not taken from him.

### (4)    Equal Protection.

To state a claim for equal protection violation the plaintiff "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 929, 984 (8th Cir. 2004) (citing *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998)).

### A.    Firefighter Training Course.

Dalrymple claims his rights under the equal protection clause were violated by Sgt. Peters when Dalrymple was not allowed to participate in the Department of Corrections' firefighter training course. Dalrymple also claims Warden Dooley violated his rights by not "overriding" Peters' denial. Dalrymple does not have a fundamental right to participate in the firefighter training. *Wishon v.*

*Gammon*, 978 F.2d 446, 450 (8th Cir. 1992). The record is that Dalrymple was denied admission into the training course because he had previously been convicted of escape. Admission into the program requires that an inmate does not have a history of escape. Dalrymple was not the only inmate who was refused admission into the program. More inmates are refused entrance into the program than are admitted. There is nothing in the record to show that Dalrymple was treated differently from a similarly situated class of inmates, that the different treatment burdened one of Dalrymple's fundamental rights, or that the different treatment bore no rational relation to a legitimate penal interest.

### B. Participation In Paralegal Course and Business Management Course.

Dalrymple asserts his equal protection rights were violated by Travis Tjeerdsma and Deputy Warden Jennifer Stanwick-Klimek when he was not allowed to participate in a paralegal course and when he was not allowed to participate in a business management correspondence course. Dalrymple does not have a fundamental right to participate in these classes. *Wishon*, 978 F.2d at 450. The record is that he did not complete and deliver the appropriate enrollment forms. Other inmates have been refused entry for failure to provide the appropriate documentation to enroll. The record contains no evidence that Dalrymple was denied a fundamental right or that he was treated differently from other inmates similarly situated.

### C. Use of Typewriter.

Dalrymple and White claim James Halsey denied them access to the typewriters in retaliation against them because they sued him in another lawsuit. The record shows the only times when an inmate is denied access to a typewriter are when the typewriters are already in use or if it is not an

16

inmate's unit's assigned time to use the library.  Halsey has told other inmates as well that they must wait their turn for their unit's assigned hours or until a typewriter is available.  The record contains no evidence that Dalrymple or White was denied a fundamental right or that they were treated differently from other inmates similarly situated or that they were prejudiced by having to wait their turn for the use of a typewriter.

### D.      Use of A Personal Fan.

Dalrymple asserts Kim Lippincott did not allow him to use a personal fan in the day hall while other inmates were allowed.  The undisputed record is that none of the inmates are allowed to use personal fans in the day hall.    The record contains no evidence that Dalrymple  was denied a fundamental right or that he was treated differently from other inmates similarly situated with regard to use of a personal fan in the day hall.

### E.      Mail Claims.

Dalrymple and White make claims about their mail.  Defendants correctly describe the standard:

> The Eighth Circuit has held that "[a] prisoner's constitutional right to send and receive mail may be restricted only for legitimate penological interests." *Phelps v. u.S. Fed. Gov't,* 15 F.3d 735,740 (8th Cir. 1994) (citing *Thornburgh v. Abbott,* 490 U.S. 401, 407, 413, 109 S.Ct. 1874, 1878, 1881, 104 L.Ed.2d 459 (1989)). "Regulations involving the review of incoming mail in prisons need only be 'reasonably related to legitimate penological interests.'" *Murphy v. Missouri Dep't of Corr.,* 372 F.3d 979, 985-86 (8th Cir. 2004) (quoting *Thornburgh,* 490 U.S. at 413-14, 109 S.Ct. at 1874). In determining whether a regulation is reasonably related to a legitimate penological interest, the Court "must consider (1) whether there is a rational connection between the regulation and a neutral and legitimate governmental interest; (2) whether alternative means exist for the inmates to exercise their constitutional rights; (3) the impact of accommodating that right on other inmates and prison personnel; and (4) whether reasonable alternatives to the regulation exist." *Kaden v. Slykhuis,* 651 F.3d 966, 968 (8th Cir. 2011) (citing *Turner v. Safley,* 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

Doc. 168, p. 21.

### 1. Incoming And Outgoing Legal Mail—St. Pierre.

Dalrymple claims Nicole St. Pierre has denied him his incoming and outgoing nonlegal mail. The undisputed record is St. Pierre is in charge of screening incoming mail, but she does not screen outgoing mail. Outgoing mail is handled by other unit personnel not named in this claim. St. Pierre rejected and did not deliver of two pieces of mail addressed to Dalrymple because they violated MDSP rules. One rejected mail item contained nudity. The other was a magazine which did not come from the publisher. Both items of mail violated prison rules. (Doc. 168-13, p. 3, ¶¶ 6 & 8). Dalrymple makes no showing the pertinent regulations are not reasonably related to legitimate penological interests. Dalrymple's constitutional right to receive mail was not violated. St. Pierre's conduct was lawful. She is protected by the doctrine of qualified immunity.

### 2. Incoming And Outgoing Legal Mail— Grosshuesch.

White asserts Ms. Grosshuesch read his outgoing legal mail and attempted to prevent him from mailing it. Under South Dakota Department Of Corrections policy, mail is inspected and the envelope sealed in the presence of the inmate. The envelope is then stamped and signed by the inspecting official. White makes no showing the regulation is not reasonably related to legitimate penological interests. The regulation aims to promote security in the prison for the inmates and those who work there. The undisputed record is that pursuant to this regulation White's letter was inspected, not read. Upon inspection, it was evident to Grosshuesch the letter was not penned in White's hand. White was questioned about this as it is against prison policy to assist another inmate with legal work. The letter was mailed despite this violation of prison policy. White makes no showing the regulation is not reasonably related to legitimate penological interests. White's constitutional right to send legal mail was not violated. Grosshuesch's conduct was lawful. She is

18

protected by the doctrine of qualified immunity. White was not prejudiced by her inspection of his outgoing legal mail.

### F.   Retaliatory Discipline Claims.

Dalrymple and White assert claims they were disciplined in retaliation for naming Defendants in lawsuits. The defendants correctly describe the standard:

> A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline. *Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1119 (8th Cir. 2007). "[C]laims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols,* 511 F.3d 826, 830 (8th Cir. 2008) (citations omitted).

Doc. 168, p. 26.

### 1.   Use of Typewriters.

This subject was previously addressed in this opinion under (4)C.

### 2.   Legal Services.

White asserts he sent a kite to speak with legal services but the request was denied out of retaliation for pending litigation by Warden Dooley and Deputy Warden Stanwick-Klimek. The undisputed record is that neither Warden Dooley nor Deputy Warden Stanwick-Klimek recall receiving a kite from White. White has produced no evidence to show he was prejudiced by being refused an opportunity to speak with legal services or to use the law library. White's constitutional right to legal services or to the law library was not violated.

### 3.   Use Of The Law Library.

Dalrymple asserts he attempted to respond to a letter from opposing counsel (Assistant Attorney General William Golden) but was denied access to the law library by Tammy Doyle in

19

retaliation for his pending litigation. The undisputed record is that Doyle does not recall ever revoking a pass issued by another staff member for Dalrymple or any other inmate in the approximately 14 years she has been a Unit Manager. Each unit is assigned two days of the week for use of the library. Fridays are reserved for inmates with special circumstances such as a deadline. An inmate must obtain a pass from unit staff to use the library. Doyle recalls frequently issuing passes to Dalrymple so that he could use the law library. Dalrymple had access to the law library at least two days a week. The undisputed record is that Doyle did not deny Dalrymple access to the law library. Dalrymple has produced no evidence to show he was prejudiced by being refused use of the law library. Dalrymple's constitutional right to use the law library was not violated.

### 4.    Housing Area Writeup.

White asserts he faced retaliatory discipline when he was written up for being in a housing area to which he was not assigned. The defendants' description of events stands undisputed in the record:

> White, however, admits that he was in a housing area that was not he is own. Furthermore, he does not deny that he had more than three write-ups in a six-month time period. Rather, he contends that he had permission to be in the normally prohibited area. This allegation was presented to the Unit Disciplinary Committee (UDC) which found that White did not have permission and had violated the rules. ... In fact, the Disciplinary Report indicates that White accepted the offer regarding the sanction.

Doc. 168, p. 30.

More than "some evidence" exists that White committed a rule violation. *Hartsfield,* 511 F.3d at 830. Defendants correctly assert "[h]e does not demonstrate that he was exercising a protected right. He also cannot show that but for the exercise of a protected right, he would not have been disciplined." (Doc. 168, p. 30).

### 5.    Insolence Writeup.

White asserts he faced retaliatory discipline when he was written up for insolence by Officer Archambeau, an unnamed party to this lawsuit. The undisputed record is that the White was not disciplined for constitutionally protected conduct. Archambeau's report is that White called Archambeau a "racist mother fucker." White's defense is that "I just told him I thought he was a racist mother fucker. I didn't say 'fucker' I said 'f er.'" (Doc. 168, p. 31). Some evidence supports the rule violation. *Hartsfield*, 511 F.3d at 830.

### 6.    Denial Of Use Of A Personal Fan As Retaliation.

This issue was addressed in (4)D.

### 7.    Access To Law Library.

Dalrymple claims he was retaliated against by Lori Drotzman when she didn't respond to his kite asking for access to the law library. The undisputed record is that Drotzman is the Education Supervisor in charge of maintaining the law library, but she is not in charge of deciding who may access the law library. Access is controlled by unit staff. Drotzman does not recall ever receiving a kite from Dalrymple and she has never refused Dalrymple access to the law library. The undisputed record is that Drotzmann did not deny Dalrymple access to the law library. Dalrymple has produced no evidence to show he was prejudiced by being refused use of the law library. Dalrymple's constitutional right to use the law library was not violated.

### 8.    Disciplinary Write Up Caused By Dislike Of White.

White claims he was retaliated against because of dislike for him when he was written up for conduct that disrupts or interferes with security, order, or a staff member in the performance of

21

his/her duties. Some evidence exists that justifies the disciplinary action. White committed violations of the institution's rules, i.e. he lied and disobeyed a verbal order. Warden Dooley did not tell White that inmates do not need permission to attend the library on Fridays and White disobeyed an order when he was denied permission to go the library by Christensen, but was later discovered in the law library.

### 9.   Discipline For Entering Another Inmate's Room.

White claims he was wrongfully accused of entering another inmate's room.   White has produced no fact to support the conclusion he had a constitutionally protected right to enter another inmate's room. The undisputed record is White admitted the charges and accepted the sanctions. White has not shown that he exercised a constitutionally protected right and that exercising that constitutionally protected right was the motivation for his discipline.

### G.   Due Process Claims.

The defendants have correctly described the standard:

> The Eighth Circuit has held that in order to prevail on a due process claim in this context, a prisoner "must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir.2003). "To show he was deprived of a protected liberty interest, [Dalrymple and/or White] must identify conditions that impose 'atypical or significant hardship ... in relation to the ordinary incidents of prison life.'" *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting *Sandin v. Conner,* 515 U.S. 472, 484,115 S.Ct. 2293,132 L.Ed.2d 418 (1995)). The Eighth Circuit has repeatedly held "'that a demotion to segregation, even without cause, is not itself an atypical and significant hardship.'" *Orr, 610* F.3d at 1034 (quoting *Phillips,* 320 F.3d at 847).

### 1.   Write Up For Being In An Unauthorized Area.

White alleges that he was written up for being in an unauthorized area while doing his job as a wheelchair pusher. Though admitting he was in an unauthorized area, Whitecontends he was denied an honest review of his write up. White was given a copy of the disciplinary report on the

22

same day. White appeared before the disciplinary committee. He was informed of his rights, including the right to a hearing before a Disciplinary Hearing Officer (DHO), an opportunity to present his case to the DHO, a right to a staff representative to assist him during the hearing, and a right to present witnesses at that hearing. White admitted to violating the institution rules. He was sanctioned to confinement of 10 days and loss of privileges. White received due process. *Dible v. Scholl,* 506 F.3d 1106, 1110 (8th Cir. 2007) (citing *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). White was not deprived of his liberty because he was not deprived of conditions that impose atypical or significant hardship in relation to the ordinary incidents of prison life. *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010) (nine months in administrative segregation did not amount to an atypical or significant hardship); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003)(loss of contact visitation, exercise privileges and chapel rights for 37 days did not constitute an atypical or significant hardship); and *Portley-EI v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (30 days in punitive segregation was not an atypical or significant hardship).

> ### 2.    Refusal To Look At Video Re: Write Up For Being In An Unauthorized Area.

White received five days loss of privileges for being in another inmate's room. He wanted the prison officials to look at the camera recording which would show he did not enter the room, but they refused. White was not deprived of his liberty because he was not deprived of conditions that impose atypical or significant hardship in relation to the ordinary incidents of prison life. See the cases cited in the previous section. The undisputed record is that White was provided notice of the disciplinary action and informed of his rights to proceed to a hearing where he could present a defense and hear the evidence against him. *Dible,* 506 F.3d at 1110. He waived those rights and

23

accepted the sanction offered him. Also, there was some evidence in the record which supported the disciplinary action. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356.

## CONCLUSION and RECOMMENDATION

For the reasons explained above, it is respectfully RECOMMENDED to the District Court that Defendants' Motion for Summary Judgment (Doc. 167) be GRANTED.

### NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

Dated September __11__, 2014.

BY THE COURT:

John E. Simko
United States Magistrate Judge